**AFFIRMED and Opinion Filed December 5, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01092-CV**

**SOUTHWEST CHURCH OF CHRIST, Appellant**
**V.**
**COUNTRY PROPERTIES HOMEOWNERS, Appellee**

**On Appeal from the 361st District Court**
**Brazos County, Texas**
**Trial Court Cause No. 22-001515-CV-361**

# MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Goldstein

This is an accelerated appeal of an order granting a temporary injunction. Southwest Church of Christ appeals the trial court's order granting a temporary injunction against Southwest Church of Christ (the Church) and enjoining the Church from continuing construction of a church building. In three issues, the Church argues Country Properties Homeowners (the Homeowners) failed to prove that the Church's property is subject to a deed restriction, the deed restriction is void because it does not comply with the statute of frauds, and the deed restriction does not prohibit the construction of a church building. After reviewing the evidence, we

conclude the trial court did not abuse its discretion in issuing the temporary injunction. We affirm the trial court's order.

## BACKGROUND

In July 2022, the Homeowners filed their original petition against the Church. The petition alleged that the Homeowners listed on an attached exhibit owned lots in the rural subdivision called Country Properties in Brazos County. Also attached to the petition was a document imposing restrictive covenants on the lots of Country Properties on file and recorded in the appropriate records of Brazos County, Texas by the developer of Country Properties, Jay D. Dickens, on May 13, 1987, Vol. 970, page 746. Among other things, the deed restrictions provided that "only one single family residence is allowed per five acres of land," and "no commercial business shall be established on this property" and "no advertising sign of any kind shall be displayed for public view." The petition alleged the Church "purchased the only lot without a residence" and that the lot was subject to the restrictive covenants. Nevertheless, although the Homeowners advised the Church of the violation of the deed restrictions, the Church failed to respond or take any action to stop the construction of a worship center on the lot. The Homeowners sought a declaratory judgment, preliminary and permanent injunctive relief, a temporary restraining order, a temporary injunction, and a permanent injunction. On July 11, 2022, the trial court issued a temporary restraining order and set the hearing on the application for a temporary injunction.

On August 7, 2022, the Church filed a plea to the jurisdiction, motion to dismiss, original answer, counterclaim, and jury demand in which it asserted, among other things, that the Homeowners lacked standing, the Homeowners' claims were not ripe, the alleged deed restrictions were void under the statute of frauds, and the alleged deed restrictions did not prohibit the Church's "past and present use of the property."

## TEMPORARY INJUNCTION HEARING

At a hearing on August 11, 2022, the trial court first overruled the Church's plea to the jurisdiction and motion to dismiss following the arguments of counsel. The trial court then turned to the issue of the temporary injunction. Todd Carroll testified that he owns three lots in Country Properties, and he received a copy of the deed restrictions for Country Properties at the time he closed on all three lots. Carroll testified the "two biggest" restrictions were "only single family dwellings" and "that you cannot subdivide or replat less than five acres." The subdivision consists of ten lots, Carroll testified, and the Church owned one lot, Carroll owned three lots, and the six remaining lots all contained single family residences. Carroll became aware there was going to be construction on the Church lot when "[s]ome equipment moved in" and a sign appeared identifying "Raven Partners." Carroll's "impression was that it's a home builder." When Carroll saw a slab being poured on the Church lot, he also "assumed it was a home." However, when Carroll saw a metal building going up and "the entry was put up," the construction "didn't look like it was a

–3–

home." Carroll called his neighbor Lori Williams, who told Carroll the building was going to be a church. Carroll and six of his neighbors then consulted a lawyer.

Lori Williams testified she purchased a lot in Country Properties in December 1999. Williams' title policy included the deed restrictions for Country Properties, and she read and understood those deed restrictions. Williams noticed construction beginning on the church lot in "late May" and "next came the slab," but she could not tell from the slab "what type of structure it would be," and she did not enter the property. When Williams saw metal framing going up, she thought it was a "barndominium or something," but once "they hung dormer windows," Williams "assumed that it was going to be something other than a house because it didn't look like a house at that point." Williams testified that the "timeframe . . . at this time" was in June. Williams called the number on the "Raven Homes" sign and learned that the building was a church. Williams raised the issue of the deed restrictions but was told she "needed to talk to the church themselves." Through the "Brazos CAD" and Google, Williams found a phone number for the Church. When Williams called the Church and spoke to "Mr. Dickens," she confirmed that the building was going to be a church and asked if Dickens was aware of the deed restrictions. Dickens answered that "there was [*sic*] no deed restrictions and then the next sentence was, it doesn't matter if there's deed restrictions because they're a church and they don't abide by them." Based on her conversation with Dickens, Williams spoke to Carroll

and other neighbors and discussed a plan to have Carroll talk to his attorney and determine "what could possibly be done."

Rodney Horrell testified he purchased the lot adjacent to the church lot in the summer of 2016, and the lot already had a single family home on it. Horrell testified that his title policy referenced the deed restrictions on the lot, and he received a copy of the deed restrictions at closing and prior to closing from his realtor. On January 25, 2021, a man who identified himself as "Jimmy" spoke with Horrell, and "identified himself as a member and shared they'd be building a church there." Horrell "mentioned that there were some restrictions and [Jimmy] acted as though he hadn't seen those," so Horrell emailed a copy of the restrictions to Jimmy. Horrell testified his "concern raised" when Carroll contacted him and he learned the church intended to build a church with a parking lot, lights, and a sign. A copy of Horrell's email was admitted into evidence. Later in the hearing, a copy of the Brazos Central Appraisal District's description of the church property was also admitted into evidence showing the following legal description: "COUNTRY PROPERTIES, BLOCK 1, LOT 3A, ACRES 6.87."

On August 26, 2022, the trial court signed an order denying the Church's plea to the jurisdiction and motion to dismiss and granting a temporary injunction setting a trial on the merits and commanding the Church to desist and refrain from the following:

1. Continuing any construction of the structure or building intended as a church on the Church Lot as described in the Petition;

2. Taking any action to complete the structure or building on the Church Lot:

3 Using the structure or building being constructed on the Church Lot for any purpose other than as a single family residence.

This appeal followed.

## STANDARD OF REVIEW

A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The question before the trial court is whether the applicant is entitled to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Id*.; *see State v. Sw. Bell Tel. Co*., 526 S.W.2d 526, 528 (Tex. 1975) (defining status quo as the "last, actual, peaceable, non-contested status that preceded the pending controversy"). "To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim." *Fox v. Tropical Warehouses, Inc*., 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.) (citing *Butnaru,* 84 S.W.3d at 204).

We review a temporary injunction for an abuse of discretion. *See Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principles. *Id*. at 211. We will not disturb the trial court's decision to grant injunctive relief absent a clear

abuse of discretion. *Reagan Nat'l Advert. v. Vanderhoof Family Tr.*, 82 S.W.3d 366, 370 (Tex. App.—Austin 2002, no pet.). Our scope of review is limited to the validity of the order granting or denying the temporary injunction. *See id.* When reviewing the order, we view the evidence in the light most favorable to the order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion." *Fox*, 121 S.W.3d at 857. "A trial court does not abuse its discretion if it bases its decision on conflicting evidence and evidence in the record reasonably supports the trial court's decision." *Id.*

## ANALYSIS

In general, temporary injunctive relief is warranted when a movant shows: (1) a probable right of recovery; (2) imminent, irreparable harm will occur if the request is denied; and (3) no adequate remedy at law exists. *Marcus v. Whispering Springs Homeowners Ass'n, Inc.*, 153 S.W.3d 702, 707 (Tex. App.—Dallas 2005, no pet.). When an injunction is sought to enforce a restrictive covenant, however, the movant is not required to show proof of irreparable injury. *Id.* Instead, the movant need show only that the defendant intends to do an act that would breach the covenant. *Id.* In granting the temporary injunction, the trial court found and concluded:

> that Plaintiffs will probably prevail on the trial of this cause; that Defendant intends to complete construction of the building to be used as a church on Defendant's lot before the Court can render judgment in this cause; and if Defendant carries out that intention, Defendant will thereby alter the status quo and will adversely affect the judgment

–7–

which will likely be rendered in this case that the church building being constructed is not a single family residence and violates the restrictive covenants on Defendant' lots; and Plaintiffs will have no adequate remedy at law after construction and use of the structure as a church in violation of the restrictive covenants for Country Properties' lots.

In its first issue, the Church argues the Homeowners failed to prove that the Church's property is "subject to the purported deed restriction." In support of this argument, the Church cites only one case, *Country Community Timberlake Village., L.P. v. HMW Special Utility District*, 438 S.W.3d 661, 668 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), for the proposition that, in order to enforce a deed restriction, the proponent must first prove that he or she owns property that is subject to or affected by the deed restriction. The totality of the Church's argument is that none of the Homeowners offered competent evidence that they or the Church owned property subject to the deed restriction. For these reasons, the Church asserts that "the preliminary injunction should be dissolved."

The Church cites nothing in the record to support its contentions under this issue. On the contrary, the record shows Carroll testified that he owns three lots in Country Properties, and he received a copy of the deed restrictions for Country Properties at the time he closed on all three lots, reflecting on the face that the restrictions were filed of record in Brazos County. Williams and Horrell testified they purchased lots in Country Properties, and their title policies included the deed restrictions for Country Properties. The trial court admitted into evidence copies of documents from the Brazos Central Appraisal District showing the legal description

of the Church's property is "COUNTRY PROPERTIES BLOCK 1, LOT 3A." The deed restriction stated that its "restrictive covenants and use limitations covering all such tracts" were made "for the purpose of instituting and carrying out a uniform plan for the development and sale of tracts in Country Properties, a subdivision" in Brazos County, Texas. On this record, we conclude the trial court did not abuse its discretion in impliedly determining that the evidence showed that the Church and the Homeowners owned property in a subdivision called Country Properties in Brazos County, Texas, and that the properties in that subdivision were subject to the deed restrictions at issue. *See id.* We overrule the Church's first issue.

In its second issue, the Church asserts that the deed restriction is void because it does not comply with the statute of frauds. Specifically, the Church complains that the deed restrictions in this case do not "locate the general area" under consideration nor do they "contain information regarding the size, shape, and boundaries" of the property that is to be restricted, citing *Reeder v. Curry*, 426 S.W.3d 352, 359 (Tex. App.—Dallas 2014, no pet.). The Church supports its argument with citation to the following authorities:

> To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed. A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty.

*AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008).

> A "conveyance of property . . . which fails to describe a definite tract of land is void." *Id.* The writing does not have to list metes and bounds

to be enforceable, but it must provide the necessary information to identify the property with reasonable certainty. *May v. Buck*, 375 S.W.3d 568, 574 (Tex. App.—Dallas 2012, no pet.). An unidentifiable portion of a larger, identifiable tract is not sufficient to satisfy the statute of frauds. *Id.* at 574–75. "The legal description in the conveyance must not only furnish enough information to locate the general area as in identifying it by tract survey and county, it need contain information regarding the size, shape, and boundaries." *Id.* at 575 (quoting *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). "Even when 'the record leaves little doubt that the parties knew and understood what property was intended to be conveyed . . . the knowledge and intent of the parties will not give validity to the contract and neither will a plat made from extrinsic evidence.'" *Reiland*, 213 S.W.3d at 437 (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 540 (Tex. 1972)).

*Reeder*, 426 S.W.3d at 359.

Again, other than citing the exhibit containing the deed restrictions, the Church does not provide citations to the record to support its assertions. A review of the document creating the deed restrictions, as previously discussed, shows that it pertains to a subdivision called Country Properties. Further, the document refers to the subdivision Jay Dickens owns and provides that the restrictions contained therein may be altered by a majority of owners of "the tracts in this recorded subdivision." The document defines a "tract" as "one of the original 10 tracts appearing on the recorded subdivision plat." Under these circumstances, we conclude the trial court did not abuse its discretion in impliedly determining that the deed restriction provided the necessary information to identify the property subject to the restriction with reasonable certainty. *See May*, 375 S.W.3d at 574. We overrule the Church's second issue.

–10–

In its third issue, the Church asserts that the deed restriction does not prohibit the construction of a church building. Specifically, the Church argues the deed restriction "says nothing whatsoever about the construction of church buildings," and the Homeowners are trying "to shoehorn their objections into the document's prohibition against 'commercial businesses.'" In addition, the Church argues the deed restrictions do not create a "residential only" subdivision because, at most, the restrictions limit "the *number* of homes that can be constructed on a given tract."

The Texas Property Code defines a restrictive covenant as "any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or administrative," and it requires that a restrictive covenant "shall be liberally construed to give effect to its purposes and intent." TEX. PROP. CODE §§ 202.001(4), 202.003(a). In construing a restrictive covenant, our primary task is to determine the intent of the framers of the covenant. *Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 434 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

The restriction here stated, in pertinent part, that "Only one single family residence is allowed per five acres of land." The document creating the restriction further stated the express "purpose of instituting and carrying out a *uniform* plan for the development and sale of tracts in Country Properties." (Emphasis added). While the restriction does not mention the word "church," it does provide that only one single family residence is permitted per five acres and specifically expresses the

–11–

purpose of carrying out a uniform plan for the development of tracts in Country Properties. A uniform plan for development reflects an intent to make Country Properties a uniformly residential development. *See id.* The Church intended to build a seven thousand square foot worship center, with a parking lot, lighting, and a sign. Thus, whether the Church would be considered "commercial," its intention to build a church on its tract in Country Properties would violate the argued residential purpose of the restriction. Viewing the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, we conclude the order was not so arbitrary that it exceeded the bounds of reasonable discretion. *See Fox*, 121 S.W.3d at 857. We further conclude the trial court did not abuse its discretion in determining the Homeowners were entitled to preserve the status quo of the subject matter of the suit pending a trial on the merits because the Church intended to do an act that would breach the deed restrictions. *See Marcus*, 153 S.W.3d at 706–07. We overrule the Church's third issue.

We affirm the trial court's order.

/Bonnie Lee Goldstein/
221092F.P05                                BONNIE LEE GOLDSTEIN
                                           JUSTICE

–12–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

SOUTHWEST CHURCH OF
CHRIST, Appellant

No. 05-22-01092-CV     V.

COUNTRY PROPERTIES
HOMEOWNERS, Appellees

On Appeal from the 361st District
Court, Brazos County, Texas
Trial Court Cause No. 22-001515-
CV-361.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Kennedy participating.

In accordance with this Court's opinion of this date, the trial court's order granting a temporary injunction against Southwest Church of Christ is **AFFIRMED**.

It is **ORDERED** that appellees COUNTRY PROPERTIES HOMEOWNERS recover their costs of this appeal from appellant SOUTHWEST CHURCH OF CHRIST.

Judgment entered December 5, 2023